UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JO ANN ALBANESE, : | |
|         *Plaintiff* : | |
| v. : | C.A. No.: 1:22-cv-00338 |
| : | |
| TOWN OF NORTH KINGSTOWN, by : | |
| and through its Treasurer, alias, Finance Director, : | |
| James Lathrop, Town Manager Ralph Mollis, : | |
| and, NORTH KINGSTOWN POLICE : | |
| DEPARTMENT, by and through its Town Manager, : | |
| Ralph Mollis, as head of public safety, Chief of : | |
| Police Patrick Flanagan, alias, and, each : | |
| individually and in their official capacity as TOWN : | |
| OF NORTH KINGSTOWN as Director of Public : | |
| Safety, and CHIEF OF POLICE, and : | |
| Thomas Robinson, Andrew Pluta, Jeffery St. Onge, : | |
| Charles Smith, Daniel Silva, John MacCoy, and : | |
| Harbormaster James Broccoli, Harbormaster Edward : | |
| Hughes, individually and in their official capacity, : | |
| John Doe, alias, and Jane Does 1-20, : | |
|         *Defendants.* : | |

## FIRST AMENDED COMPLAINT

### I.    Introductory Statement

1.    This civil action is brought by the Plaintiff seeking a declaratory judgment, injunctive relief, and compensatory and punitive damages for acts and/or omissions of Defendants in violation of Plaintiff's rights including but not limited to, freedom from unreasonable search and seizure, unlawful prosecution, excessive force, arrest without probable cause, deliberate indifference, lack of due process, and deprivation of equal protection under the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983, and under Article 1, § 6 of the Rhode Island Constitution and under the common law of the State of Rhode Island.

2.    Plaintiff, Jo Ann "Sunny" Albanese ("Ms. Albanese," "Plaintiff"), brings claims which arise from the prosecution of a matter (which was dismissed on May 31, 2022 and July 13, 2022)

1

involving an encounter with the North Kingstown Police Department ("NKPD") on September 19, 2019 and numerous encounters with The North Kingstown Police Department's Harbor Master for the year of 2016, Edward Hughes and or James Broccoli.[1]

3. In 2014, Ms. Albanese moved to North Kingstown. The Town has 275 town-issued moorings rented out at $150 per season. With a 20-year waiting list, these moorings are essentially unattainable for ordinary Rhode Islanders, like Ms. Albanese. Anyone, however, can pay $2000-$3000 per year to one of the two marinas operating on Mill Cove, which together rent out fifty-five (55) moorings on a commercial basis.

4. The problem, however, is that in 1977 the U.S. Army Corps of Engineers told North Kingstown that the commercial moorings needed to be removed because part of Mill Cove is a federal waterway and the Town's commercial activities in renting the 55 moorings were barred by federal regulation. For twenty years the Town did essentially nothing to comply, as she was

5. For the 2014 and 2015 seasons, Ms. Albanese rented one of these moorings from one of the marinas operating on Mill Cove. However, just days before the 2016 season was to begin, Ms. Albanese was informed that there were no longer any available moorings.

6. On information and belief, the refusal to rent to Ms. Albanese was retaliation for complaints she had made the prior season relative to a large vessel improperly tied to someone else's mooring, which was colliding with and causing damage to Ms. Albanese's vessel.

7. On information and belief, Harbormaster Edward Hughes and/or James Broccoli refused to provide Ms. Albanese with the ownership/registration information for the improperly moored vessel, as her insurance company was demanding same further to the claim she made for the damage to her boat.

8. Ms. Albanese unsuccessfully petitioned the Town Council for the return of her reserved

---

[1] https://www.providencejournal.com/story/news/2017/10/14/hummel-report-sunny-and-goliath-one-womans-battle-to-keep-her-boat-in-wickford/18283283007/

mooring. On information and belief, the Harbormaster, in collusion and/or connivance with Defendant Town, invoked "excessive drinking" as the bogus rationale for shutting her out of the cove, as part of their campaign against less fortunate residents like Ms. Albanese.

9. Ms. Albanese does not drink alcohol and cannot drink alcohol due to a serious medical condition.

10. As a temporary solution, Albanese spent 2016 anchored in the federal waterway amidst the illegal commercial moorings.

11. On information and belief, this prompted the Town to pass a new ordinance the following January aimed directly at Ms. Albanese, prohibiting boats from anchoring in town waters for more than forty-eight (48) hours, with fines up to $500 per day.

12. The Town issued Ms. Albanese 150 tickets with fines totaling over $70,000.00.

13. To further their campaign of mistreatment and alienation, the Town sought to bar Ms. Albanese from using a dock across from 121 Fowler Street, North Kingstown, which Ms. Albanese would use to tie up her dinghy.

14. The true ownership of the above-described dock is unclear, with information suggesting that this dock was reserved for public waterfront access, as the dock appears to emanate from land owned by the Town.

15. Nevertheless, in furtherance of their plan to essentially banish Ms. Albanese, Defendant Town relied on a 1995 action of the Coastal Resource Management Council (CRMC) which allegedly granted a curious "assent" to the then-current owner of 121 Fowler St., which allegedly reserved the contested dock for private use by the residents of 121 Fowler St.

16. Alleged activity on and about this dock is underlying the encounter with NKPD that landed Ms. Albanese at Kent Hospital in September 2019, which is the subject of this litigation.

17. The aforementioned encounter is one of several encounters between Plaintiff and NKPD.

18. Defendants' failure to provide appropriate training and supervision over how its police officers respond to individuals, and in the Constitutional prohibitions against arresting and prosecuting people without probable cause, has cultivated an environment in which these defendant police officers acted accordingly and thereby caused Ms. Albanese great harm.

19. Defendants' failure to properly observe and obey clearly established state and federal laws governing the waterways and marina, and the public's right to access said areas, is a failure to provide appropriate training, supervision, and instruction to follow federal notices, to respond to individuals, and has cultivated an environment in which the Defendant Harbormaster acted accordingly, thereby causing Plaintiff Albanese great harm.

20. Defendants' failure to properly train police officers how to treat detainees and persons in custody, and in the Constitutional prohibitions against assaulting and punching persons detained over sixty years old, is in violation of State and Federal Law.

21. The Town began its harassment and targeting of Plaintiff with the aforementioned occurrence which was a state headline story where Plaintiff exposed the illegal harboring activity after she was tossed out of Mill Cove on meritless and baseless claims of drunkenness.

22. Plaintiff availed herself of the Federal Army of Engineers program that originally dredged the area and thus prohibited any private mooring as it was a federal program that created the harbor area and thus allowed her to 'park' her boat on the mooring for free.

23. What ensued was a concerted effort to toss Plaintff out of the Town for upsetting the apple cart—the very lucrative apple cart.

24. Just when they needed it, a dock that was public was magically transferred to a wealthy landowner which then illegally became his private dock – the exclusive rights to which the North Kingstown Police sought to enforce and protect like they were a private security team, with Ring cameras

and manhunts for Jo Ann Albanese because she dared to use this dock to access her home on the federally protected waterway, her only means of getting to and from her floating home.

25. The elite constituents lodged numerous complaints, based falsehoods and fictions, claims that they were the owners of the Dock and Joanne was prohibited from stepping foot near their private dock, as it was not meant for peasants or apple-cart upsetters. Thus, the Keystone Cops were deployed to arrest Ms. Albanese for accessing a public dock.

26. Plaintiff moved to North Kingstown and was harassed and targeted by the town for upsetting the elites—the elites who donate to the politicians and the police department – thus she needed to go, for taking advantage of the free public moorings the Town then engaged in a concerted effort to make her pay for challenging the exclusive use of these areas for wealthy persons – how dare Joann Albanese!

## II.     Parties

27. Plaintiff Jo Anne Albanese ("Plaintiff" or "Albanese") was at all times relevant to this Complaint a resident of North Kingstown, Rhode Island. Albanese is a person over sixty (60) years of age.

28. Defendant TOWN OF NORTH KINGSTOWN ("North Kingstown" or "Town") is a municipal corporation duly authorized and organized under the laws of the state of Rhode Island and is sued through its Town Manager, Ralph Mollis, and Town Finance Director James Lanthrop, alias, the official designated by R.I.G.L. § 45-15-5 to be named in a suit for relief against the Town. The Town is liable under the doctrine of *respondeat superior* for the acts and/or omissions of its agents, employees, and/or representatives committed in the course of their employment in violation of State law complained of herein.

29. Defendant Chief of Police Patrick Flanagan ("Defendant") is sued individually and in his official capacity as Chief of Police and Director of Public Safety with the Town of North Kingstown and at all relevant times was acting under color of state law.

30. Defendant Officer Thomas Robinson ("Defendant Robinson") is sued individually and in his official capacity as a police officer with NKPD and at all relevant times was acting under color of state law.

31. Defendant Officer Andrew Pluta, ("Defendant Pluta") is sued individually and in his official capacity as a police officer with NKPD and at all relevant times was acting under color of state law.

32. Defendant Detective Lieutenant Jeffery St. Onge, ("Defendant St. Onge") is sued individually and in his official capacity as a police officer with NKPD and at all relevant times was acting under color of state law.

33. Defendant Officer Charles Smith, ("Defendant Smith") is sued individually and in his official capacity as a police officer with NKPD and at all relevant times was acting under color of state law.

34. Defendant Lieutenant Daniel Silva, ("Defendant Silva") is sued individually and in his official capacity as a police officer with NKPD and at all relevant times was acting under color of state law.

35. Defendant Captain John MacCoy, ("Defendant MacCoy") is sued individually and in his official capacity as a police officer with NKPD and at all relevant times was acting under color of state law.

36. Defendant James Broccoli, Harbormaster ("Defendant Broccoli") is sued individually and his official capacity as Harbormaster for the town of North Kingstown.

37. Defendant Edward Hughes, Harbormaster ("Defendant Hughes") is sued individually and his official capacity as Harbormaster for the town of North Kingstown.

### III.   Jurisdiction

38. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1367, 2201 and 2202, as certain claims asserted herein arise under the Constitution and laws of the United States, and 42 U.S.C. §§ 1983, 1980, 1982, 1981. Pendant Jurisdiction over the state law claims asserted herein is thus invoked.

### IV.   Venue

39. Venue is proper in this Court since, on information and belief, all of the defendants reside or may be found in the District of Rhode Island, in compliance with the requirements set forth in 28 U.S.C. § 1391. Venue is also proper because a substantial part of the events and omissions giving rise to these claims occurred in the District of Rhode Island.

### V.   Material Facts

40. On September 18, 2019, Plaintiff was wrongfully arrested and detained by employees or agents of the North Kingstown Police Department, (NKPD).

41. After several hours, NKPD was in the process of releasing Ms. Albanese with a summons to appear in the district court for Kent County.

42. However, in response to Ms. Albanese's continued objections to Defendants' refusal to return Ms. Albanese's mobile phone, Defendants then elected not to release Ms. Albanese but to hold her overnight with no legitimate law enforcement purpose.

43. On September 18, 2019, Ms. Albanese was wrongfully detained at the NKPD station, knowingly past the point at which she could be presented and arraigned at Kent County district court, and further wrongfully detained overnight at NKPD, with no legitimate basis.

44. On September 18, 2019, while in custody, Ms. Albanese was escorted down a hallway of the police department building when an NKPD Officer, on information and belief named Daniel Silva, intentionally caused his body to make harmful contact with Ms. Albanese, in retaliation for her insisting that Defendants return her mobile phone, which they had confiscated when taking her into custody.

45. Defendant Silva then proceeded to berate Ms. Albanese, accosted Ms. Albanese, and falsely and mendaciously claimed that Ms. Albanese assaulted him purely as a pretext to then grab her and shove her headfirst into the concrete wall, causing injury and scarring above her right eye, and further placing one hand on her neck, and the other hand immobilizing her thumb, then shoving her to the floor, while exclaiming "*you think you can come into this town and run it!?*".

46. Defendants ignored Ms. Albanese's pleas for medical attention until nearly 8:00 PM.

47. NKFD responded to the police department at approximately TIME.

48. After examining Ms. Albanese, paramedics transported her to Kent County Hospital.

49. At the hospital, Ms. Albanese informed her treatment providers that she was assaulted earlier that day by Defendant Silva of NKPD.

50. While at the hospital, agents of Defendant Town falsely stated to Ms. Albanese's treatment providers that her reports of assault by Defendant Silva were untrue.

51. Defendant Town retained custody of Ms. Albanese after she was discharged from the hospital, through the next day when she was arraigned and released at the Kent County district court.

52. Defendants…status of phone? Evidence on Phone?

53. As a result of the head injuries caused by Defendants actions described above, Ms. Albanese has incurred significant bills for medical treatment, was caused serious pain and suffering of

the mind and body, emotional and psychological trauma, a loss of employment and employment opportunities, and other great harm.

### *Municipal Liability*

54. Upon information and belief, the NKPD has a custom and practice of failing to properly train and supervise its officers in the constitutionally permissible exercise of their law enforcement duties, causing a custom of abusive practices, or were otherwise indifferent in their failures to train and supervise officers in constitutionally permissible practices.

55. As a direct and proximate result of Defendants acts and/or omissions, including, but not limited to, those described herein, Plaintiff has suffered deprivation of her federal and state constitutional rights.

56. As a direct and proximate result of Defendants' acts or omissions, including without limitation, those described herein, the Plaintiff has suffered and will continue to suffer mental anguish, personal injury, pain and suffering, injury to reputation, impairment of rights to be free from unreasonable search and seizure, deprivation of his civil rights, expenses for legal services, and other great damage.

57. Thus, Defendant Town of North Kingstown is liable under *Monell* v. *Dep't of Social Services of the City of New York,* 436 U.S. 658, (1978).

### VI.    Claims For Relief

58. Plaintiff hereby incorporates into the counts below each and every allegation contained in the above paragraphs as if fully incorporated and set forth herein.

### COUNT ONE

### *Violation of the Right to Equal Protection, Actionable under 42 U.S.C. § 1983*

59. Plaintiff hereby incorporates into the counts below each and every allegation contained in the above paragraphs as if fully incorporated and set forth herein.

60. Defendants, acting under color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have deprived Plaintiff of his rights to equal protection, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under the Fourteenth Amendment to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

## COUNT TWO

*Violation of the Right to be Free from Unreasonable Searches and Seizures under the Fourth Amendment of the United States Constitution*

61. Plaintiff incorporates and realleges all paragraphs above as if fully set forth herein.

62. Defendants, acting under the color of state law, by their individual and/or concerted acts or omissions, including but not limited to those described herein, have deprived Plaintiff of her rights to be free from unreasonable searches and seizures, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under the Fourth Amendment to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

## COUNT THREE

*Negligent Infliction of Emotional Distress*

63. Plaintiff incorporates and realleges all paragraphs above as if fully set forth herein.

64. Defendants, by their individual and/or concerted acts or omissions, including by not limited to those alleged herein, breached their duty of care owed to Plaintiff, thereby proximately causing Plaintiff to sustain damages as alleged herein, actionable under R. I. Gen. Laws. § 9-31-1.

## COUNT FOUR

*Violation of the Right of Freedom from Cruel and Unusual Punishment, actionable under 42 U.S.C. § 1983*

65. Plaintiff incorporates and realleges all paragraphs above and below as if fully set forth herein.

66. Defendants, acting under color of state law, by their individual and/or concerted acts or omissions, including but not limited to those described herein, have deprived Plaintiff of her right to be free from cruel and unusual punishment, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under the Eighth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

## COUNT FIVE

*False Arrest and False Imprisonment in Violation of the Fourth*
*Amendment and Actionable Under 42 U.S.C. § 1983*

67. Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have violated Plaintiff Albanese's right to freedom from unreasonable search and seizure, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

## COUNT SIX

*False Arrest and False Imprisonment in Violation of*
*Article 1, § 6 of the Rhode Island Constitution*

68. Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, violated Plaintiff Albanese right to freedom from unreasonable search and seizure, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under Article 1, § 6 of the Rhode Island Constitution directly actionable in accordance with *Jones v. State of Rhode Island*, 724 F. Supp. 25 (D.R.I. 1989).

## COUNT SEVEN

### *Common Law False Arrest*

69.     Defendant Officers, while acting in the scope of their employment, by their individual and/or concerted acts and/or omissions detained Plaintiff without probable cause and with no other legal justification, thereby causing Plaintiff to sustain harm as aforesaid.

## COUNT EIGHT

### *Malicious Prosecution in Violation of the Fourth, Fifth, and Fourteenth Amendments, Actionable Through 42 U.S.C. § 1983*

70.     Defendants, acting under color of law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have maliciously caused criminal charges to be brought against Plaintiff, without probable cause and with malice, causing Plaintiff to suffer harm as aforesaid and have therefore deprived Plaintiff of rights secured under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, actionable through 42 U.S.C. § 1983.

## COUNT NINE

### *Malicious Prosecution in Violation of Article 1, § 6 of the Rhode Island Constitution*

71.     Defendants, acting under color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have maliciously caused criminal charges to be brought against Plaintiff Albanese, without probable cause and with malice, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under Article 1, § 6 of the Rhode Island Constitution directly actionable in accordance with *Jones v. State of Rhode Island*, 724 F. Supp. 25 (D.R.I. 1989).

## COUNT TEN

### *Common Law Malicious Prosecution*

72.     Defendants, while acting in the scope of their employment, by their individual and/or

concerted acts and/or omissions, including but not limited to those described herein, have maliciously caused criminal charges to be brought and prosecuted against Plaintiff Albanese, without probable cause and with malice, in violation of the common law of the State of Rhode Island, causing Plaintiff to suffer harm as aforesaid.

### COUNT ELEVEN

*RIGL § 9-1-2 Civil Liability for Crimes and Offenses*
*to wit Defendants' Violation of RIGL § 11-5-10*

73. Plaintiff repeats and realleges every allegation made in each paragraph above, incorporating same by reference, as if fully set forth herein.

74. Plaintiff is a person over sixty (60) years of age and was caused bodily injury by Defendants.

75. The above facts constitute a violation of RIGL § 11-5-10 for which Defendants are liable under RIGL § 9-1-2.

### COUNT TWELVE

*Abuse of Process*

76. Defendants, while acting in the scope of their employment, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have maliciously caused criminal charges to be brought and prosecuted against Plaintiff Albanese, without probable cause and with malice, in violation of the common law of the State of Rhode Island, causing Plaintiff to suffer harm as aforesaid.

### COUNT THIRTEEN

*Negligent Inflection of Emotional Distress*

77. Defendants, while acting in the scope of their employment, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have maliciously caused criminal charges to be brought and prosecuted against Plaintiff Albanese, without probable cause

and with malice, in violation of the common law of the State of Rhode Island, causing Plaintiff to suffer harm as aforesaid, including without limitation, severe emotional distress.

### VII. Prayers for Relief

WHEREFORE, Plaintiff hereby prays that this Court grant the following relief:

1. A declaratory judgment that Defendants, in the manner described herein, violated the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Article 1 § 6 of the Rhode Island Constitution by violating Plaintiff's right to be free from unreasonable search and seizure, cruel and unusual punishment, excessive force, and maliciously prosecuting Plaintiff in violation of the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution and the common law of the State of Rhode Island.

2. Permanent injunctions requiring Defendants to properly train, supervise and discipline their employees/agents;

3. An award of compensatory damages;

4. An award of punitive damages;

5. An award of reasonable attorney's fees and costs of litigation to Plaintiff pursuant to 42 U.S.C. § 1988;

6. Such other and further relief as this Court deems just and proper.

### VIII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

### IX. Designation of Trial Counsel

Plaintiff hereby designates Lawrence Almagno, Esquire, as trial counsel.

    Respectfully Submitted,
    JO ANNE ALBANESE
    By her Attorney,

    /s/ **_Lawrence P. Almagno Jr._**
    Lawrence P. Almagno Jr. #9185
    ALMAGNO LAW, INC.
    10 Rangeley Road
    Cranston, RI 02920
    T | (401)-946-4529
    F | (401)-464-4529
    E | LA@ALMAGNO-LAW.COM

    Dated: January 24, 2022