UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JO ANN ALBANESE,<br>　　Plaintiff,<br><br>　　v.<br><br>TOWN OF NORTH KINGSTOWN, by and through JAMES LATHROP, in his official capacity as Treasurer, and RALPH MOLLIS, in his official capacity as Town Manager; NORTH KINGSTOWN POLICE DEPARTMENT, by and through RALPH MOLLIS, in his official capacity as Town Manager; PATRICK FLANAGAN, individually and in his official capacity as Chief of Police of the North Kingstown Police Department; JAMES BROCCOLI and EDWARD HUGHES, individually and in their official capacities as Harbormasters of the Town of North Kingstown; and THOMAS ROBINSON, ANDREW PLUTA, JEFFERY ST. ONGE, CHARLES SMITH, DANIEL SILVA, JOHN MACCOY, JOHN DOE, and JANE DOES 1-20, individually and in their official capacities as officers with the North Kingstown Police Department,<br>　　Defendants. | C.A. No. 22-338-JJM-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Before the Court is Defendants' Motion to Dismiss certain claims and some Defendants: claims that are alleged to have occurred before September 18, 2019, and

are thus outside the statute of limitations; Harbormasters James Broccoli and Edward Hughes; Chief of Police Patrick Flanagan; Officers Andrew Pluta, Thomas Robinson, and Charles Smith; Detective St. Onge; Captain MacCoy; and Counts One, Two, and Four of the Amended Complaint, for failure to state a claim upon which relief may be granted. ECF No. 34-1. For the following reasons, the Court DENIES IN PART and GRANTS IN PART Defendants' Motion to Dismiss. *Id.*

## I.  BACKGROUND

In 2014, Jo Ann Albanese moved to North Kingstown and began living on a boat in Mill Cove. ECF No. 15 at ¶¶ 3-5 (citation omitted). She initially complied with the customary practice of renting a mooring from one of the two commercial marinas. *Id.* at ¶ 5. But before the start of the 2016 boating season,[1] Ms. Albanese found herself in an unfortunate position where there were no longer any available moorings. *Id.* To accommodate for her lack of a commercial mooring, Ms. Albanese resorted to anchoring her boat in the cove. *Id.* at ¶ 10. When she needed to make trips ashore, she would take her dinghy (a smaller boat) to the dock located at 121 Fowler Street in North Kingstown ("the Dock"). *Id.* at ¶ 13. While journeying into town, she would secure the dinghy to the Dock. *Id.*

On September 18, 2019, North Kingstown Police Department ("NKPD") officers arrested Ms. Albanese on the Dock. *Id.* at ¶ 40. They transported her to the police station where they confiscated her phone and refused to return it despite

---

[1] The boating season refers to the return of seasonal Rhode Island recreational vessels to the various harbors across the Ocean State.

several requests. *Id.* ¶¶ 40-42. She alleges that while she was escorted down a hallway Lieutenant Silva intentionally collided with her. *Id.* at ¶ 44. Purportedly viewing the collision as an assault, the officer then allegedly grabbed her, shoved her headfirst into a concrete wall, placed a hand on her neck, shoved her to the ground, and exclaimed "you think you can come into this town and run it!?" *Id.* at ¶ 45 (italicization omitted). Ms. Albanese claims that she required medical attention after the encounter, but "Defendants ignored [her] pleas for medical attention until nearly 8:00 PM." *Id.* at ¶ 46. NKPD eventually did call for paramedics who took her to Kent County Hospital. *Id.* at ¶¶ 47-49. NKPD retained custody of Ms. Albanese once she was discharged from the hospital. *Id.* at ¶ 51. The next day, she was arraigned in state district court and released. *Id.*

Ms. Albanese sued the Town of North Kingstown ("North Kingstown"); the NKPD; Chief of Police Patrick Flanagan; North Kingstown Harbormasters James Broccoli and Edward Hughes; Officers Andrew Pluta, Thomas Robinson, and Charles Smith; Detective Jeffery St. Onge; Lieutenant Daniel Silva; Captain John MacCoy; and John Doe and Jane Does 1-20, in their individual and official capacities. ECF No. 1. She alleges a litany of constitutional violations under 42 U.S.C. § 1983 and several related state-law claims. ECF No. 15.

Ms. Albanese filed her original complaint ("Complaint") on September 17, 2022. ECF No. 1. Plaintiff moved for leave to amend the complaint on January 25, 2023, and a text order was issued that same day, granting the motion. ECF No. 13.

On January 25, 2023, the Plaintiff filed the Amended Complaint. ECF No. 15. Defendants then moved to dismiss portions of the Amended Complaint. ECF No. 34.[2]

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a plaintiff must present facts that make her claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine plausibility, the Court must first review the complaint and separate conclusory legal allegations from allegations of fact. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Next, the Court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.* (citations omitted).

To state a plausible claim, a complaint need not detail factual allegations, but must recite facts sufficient at least to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" cannot suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557); *see also Soto-*

---

[2] On May 23, 2023, the Court issued a Text Order granting the Motion to Dismiss as unopposed, to which the Plaintiff responded by moving to vacate. ECF No. 34. That same day, the Court then issued a Text Order granting the motion to vacate the Text Order granting the motion to dismiss.

*Torres v. Fraticelli*, 654 F.3d 153, 159 (1st Cir. 2011) (internal quotation marks omitted) (citation omitted) ("combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief").

## III. DISCUSSION

The parties' briefs identify two groups of claims. *See* ECF Nos. 34-1 at 1-2, 38-1 at 1-2. The first involves claims that allegedly occurred well before Ms. Albanese filed her Complaint, and thus would be barred by the statute of limitations. The second involves claims in the Amended Complaint that appear to differ from those in the Complaint. The Court addresses each issue in turn.

### A. Claims That Arose Before September 18, 2019

#### 1. Whether Claims Arising Before September 18, 2019, Are Barred by the Statute of Limitations

Any claim that results from conduct that occurred before September 18, 2019, is time barred because it exceeds the statute of limitations. The statute of limitations for Section 1983 claims follows Rhode Island's three-year statute of limitation for personal injury pursuant to R.I. Gen. Laws § 9-4-14(b). *See Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985) (footnote omitted) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."), *superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).

Ms. Albanese alleges four claims that relate to conduct that took place before September 18, 2019.[3] ECF No. 15 at 1-3. These claims include:

1. Harbormasters Broccoli's or Hughes' (whoever was in the office at the time) refusal to provide Ms. Albanese with her registration information for her moored vessel (the boat on which she resides);

2. North Kingstown's refusal to grant Ms. Albanese mooring rights for her vessel, "invok[ing] 'excessive drinking' as [a] bogus rationale for shutting her out of the cove;"

3. North Kingstown passing a city ordinance that precludes the anchoring of boats in the middle of the cove to prevent "applecart pushers" like Ms. Albanese from maintaining floating residences in the cove; and

4. This new ordinance caused Ms. Albanese's receipt of "150 tickets with fines totaling over $70,000."

*Id.* The Complaint is not entirely clear on the dates surrounding these disputes. *See id.* But a hidden paragraph amid Ms. Albanese's allegations of mistreatment notes that, "[a]s a temporary solution, [Ms.] Albanese spent 2016 anchored in the federal waterway amidst the illegal commercial moorings." *Id.* at ¶ 10. An article from *The Providence Journal* also traces the conduct to 2016.[4] At

---

[3] The two incidents that will be referenced throughout this discussion are: (1) the alleged wrongful arrest that occurred at the Dock; and (2) the alleged altercation between Lieutenant Silva and Ms. Albanese at the NKPD police station.

[4] *See generally* Jim Hummel, *Hummel Report: Sunny and Goliath: One Woman's Battle to Keep Her Boat in Wickford*, PROVIDENCE J. (OCT. 14, 2017, 12:01 A.M.), https://www.providencejournal.com/story/news/2017/10/14/hummel-report-sunny-and-goliath-one-womans-battle-to-keep-her-boat-in-wickford/18283283007/.

best, the Court can discern that these events occurred sometime in 2016 before Ms. Albanese's arrest. Regardless of the specific dates, the order of events dooms these claims. The Complaint was filed on September 17, 2022. ECF No. 1. Even if these claims in the Amended Complaint relate back to the Complaint under Rule 15(c) of the Federal Rules of Civil Procedure ("Rule 15(c)"), they would be time barred because they occurred outside the three-year statute of limitations (i.e., before September 18, 2019).

### 2. Whether the Court May Still Consider the Untimely Allegations as Necessary to Ms. Albanese's *Monell* Claim

Ms. Albanese responds that the Court may still consider the pre-September 18, 2019, allegations because they are "background factual circumstances" necessary for a *Monell* claim. ECF No. 38-1 at 4. A claim "against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county 'policy or custom.'" *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995); *see also Ouellette v. Beaupre*, 977 F.3d 127, 145 (1st Cir. 2020) (holding that an officer's conduct—that occurred outside of the statute of limitations for a claim against him personally—still could be considered as the basis for a *Monell* claim against the city). Therefore, conduct that might have otherwise fallen outside the statute of limitations might still prove relevant if the *Monell* claim becomes apparent only later. To state a *Monell* claim, a plaintiff must plead that "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under

7

§ 1983." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Accordingly, a plaintiff must plausibly plead that a policy or custom caused an "underlying, identifiable constitutional violation." *Kennedy v. Town of Billerica*, 617 F.3d 520, 531 (1st Cir. 2010).

In essence, Ms. Albanese argues that the pre-September 18, 2019 allegations help establish a factual basis for a continuous custom or policy that gave rise to her *Monell* claim. ECF No. 38-1 at 3-4. The Amended Complaint, however, does not support this argument. The Amended Complaint struggles to form a nexus between the claims in its "Introductory Statement," (ECF No. 15 at 1-5) claims in the "Material Facts" section (*Id.* at 7-9), any named municipal entity, and any claim within the "Claims for Relief" section (*Id.* at 9-14). Additionally, the pre-September 18, 2019, allegations form no cognizable basis to bridge the gap between a "government policy or custom" and the myriad of Section 1983 claims in the "Claims for Relief" section of the Amended Complaint. Ms. Albanese thus fails to plausibly allege an implemented policy, practice, or custom that denied her any constitutional right on or after September 18, 2019.

The only possibly related allegations deal with her claims of discrimination. *See id.* at ¶ 11 (Ms. Albanese's conduct "prompted the Town to pass a new [anchoring] ordinance the following January aimed directly at Ms. Albanese"). Yet it remains unclear how this claim relates to the later arrest on the Dock.[5] In fact, Ms. Albanese

---

[5] Moreover, the Amended Complaint states "the Town pass[ed] a new ordinance the following January." ECF No. 15. The preceding paragraph refers to the year 2016. *Id.* at ¶ 10. Viewed holistically, the allegation in paragraph eleven

8

asserts only that she was wrongfully arrested because she was using a public dock that was surreptitiously declared as private property by NKPD.[6] *Id.* at ¶ 16. She does not assert that this arrest was part of North Kingstown's discrimination against her. Accordingly, the Court grants Defendants' Motion to Dismiss any claims that relate to conduct that occurred before September 18, 2019.

### B.  Claims That Arose on or After September 18, 2019

If new claims in the Amended Complaint do not relate back to the Complaint, the statute of limitations would bar them even though they would have been timely had the Complaint included them. "An amendment to a pleading relates back to the date of the original pleading when * * * the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(B). An amended complaint relates back to the original complaint "even though the amendment invoke[s] a legal theory not suggested by the original complaint and relie[s] on facts not originally asserted." *Mayle v. Felix*, 545 U.S. 644, 659 (2005); *Tiller v. Atl. Coast Line R. Co.*, 323 U.S. 574, 580-81 (holding that the plaintiff's amended complaint related back when she added a negligence claim under the Boiler Inspection Act despite initially pleading a negligence claim under the Federal Employers Liability Act). The "conduct, transaction, or occurrence" alleged in the original and amended complaints,

---

must have taken place in January 2017—over two years before the incident at the Dock.

[6] Ms. Albanese and North Kingstown seem to disagree whether the Dock is open to the public. *See id.* at ¶¶ 13-16 (alleging that Ms. Albanese was arrested for trespassing on private property when accessing an apparently public dock).

9

must share a "common core of operative facts" with the original complaint. *Felix*, 545 U.S. at 664. The common core of operative facts must not "differ in both time and type." *Id.* at 650. The Court discusses each claim in the Amended Complaint that Defendants argue does not relate back. If a claim relates back, the Court then assesses its merits under Rule 12(b)(6).

### 1. Count One: Equal Protection Violation

Count One of the Amended Complaint alleges that North Kingstown and various individual Defendants violated Ms. Albanese's right to equal protection under the Fourteenth Amendment to the United States Constitution. ECF No. 15 at 9-10. Defendants contend that this count does not relate back to the Complaint and is therefore barred by the statute of limitations. ECF No. 34-1 at 6-8. Alternatively, they argue that Count One fails to state a claim upon which relief may be granted. *Id.* at 8-9. The Court first turns to the alternative argument because it resolves this issue.[7]

Count One fails to state a claim upon which relief may be granted because it does not plead discrimination based on a constitutionally protected class. A plaintiff alleging an equal protection violation must allege that she was treated differently

---

[7] Defendants' prime argument for why the claim does not relate back is that it does not "restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding complaint." ECF No. 34-1 at 7 (quoting *Gold v. Poccia*, 2018 WL 4521940, at *2 (D.R.I. Sept. 21, 2018) (internal quotation marks omitted). However, all that is required, to relate back, is that both complaints allege the same occurrences based on a common core of operative facts. Here, despite offering different legal theories in the two complaints, Ms. Albanese explicitly alleges unlawful arrest, unlawful detention, and unlawful conduct at the Dock and the NKPD police station in both complaints.

than others who are similarly situated and that "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Rubinovitz v. Rogato*, 60 F.3d 906, 909-10 (1st Cir. 1995) (citations omitted). A similarly situated person "is one that is roughly equivalent to the plaintiff in all relevant respects." *Est. of Bennet v. Wainwright*, 548 F.3d 155, 166 (1st Cir. 2008) (internal quotation marks omitted) (citations omitted). The facts pled must demonstrate that a defendant treated a plaintiff disparately because of that plaintiff's exercise of a "fundamental right," or because the defendant was motivated by "bad faith or malicious intent to injure." *Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen of the Town of Randolph*, 932 F.2d 89, 94 (1st Cir. 1991).

Ms. Albanese's equal protection claim fails because she does not allege that she exercised a fundamental right or that Defendants were maliciously motivated. Declaring oneself an "apple cart pusher" does not constitute membership in a protected class. Nor do vague assertions about harassment for "upsetting the elites" of North Kingstown amount to disparate treatment. Ms. Albanese did not even allege that similarly situated persons could access the Dock. The Amended Complaint alleges only that the Dock's owner is disputed, the property owners of the Dock did not want her to use the Dock, and she was ostensibly arrested for continued use of the Dock. ECF No. 15 at 1-5, 7. While she might have been improperly arrested for trespassing, there are no allegations that the motivation for this improper arrest was unconstitutional discrimination. Ms. Albanese also has failed to plead that her

altercation with Lieutenant Silva at the NKPD station was motivated by discrimination. Again, while she might have been mistreated at the police station, there are no allegations that the motivation for this mistreatment was unconstitutional discrimination. Accordingly, the Court GRANTS the Motion to Dismiss Count One.

### 2. Count Two: Unreasonable Search and Seizure

Count Two of the Amended Complaint relates back to the Complaint because the claim arises from one of the occurrences described in the Complaint. Again, like the *Felix* court pointed out, a plaintiff need not assert the same legal theory in their amended complaint, as they did in their original complaint, to relate back. *See Felix*, 545 U.S. at 659. The Defendants do not explain how the unreasonable search and seizure claim fails to relate back other than it was "not pled in Plaintiff's [Complaint] and [is] time barred." ECF No. 34-1 at 6. This argument is based on a difference of legal theories for recovery purposes. In fact, Ms. Albanese prodigiously pleads Defendants violated her "right to freedom from unreasonable search and seizure" throughout the Complaint. ECF No. 1 at 1, 5, 8. These claims include:

1. The first sentence in the "Introductory Statement" states that Ms. Albanese brought her action because the Defendants' violated her "freedom from unreasonable search and seizure."
2. Ms. Albanese's § 1983 false arrest and false imprisonment claim in Count One states the Defendants violated her "right to freedom from unreasonable search and seizure."

3. The R.I. Constitution false arrest and false imprisonment claim asserts the Defendants "violated Plaintiff Albanese'[s] right to freedom from unreasonable search and seizure."

4. Ms. Albanese pleads in the "Prayers for Relief" section that she is seeking a judgment because the Defendants violated her "right to be free from unreasonable search and seizure."

*Id.* Rule 15(c) turns on whether a plaintiff pled additional claims that rely on the same occurrence. That occurrence, pled in both complaints, will have a "common core of operative facts." *Felix*, 545 U.S. at 664. Here, the occurrence alleged in both complaints is that the NKPD unlawfully arrested Ms. Albanese at the Dock. The difference between the two complaints is that the Amended Complaint explicitly pleads an unreasonable search and seizure claim as an enumerated count in the "Claims for Relief" section, whereas the Complaint buries the allegation within the two false arrest claims. *Compare* ECF No. 15 at 10, *with* ECF No. 1 at 5. For the claim to survive a relation back test, it is not necessary that the Complaint explicitly claims unreasonable search and seizure as an enumerated count. All that is required is the shared common core of operative facts between the two complaints, which in this case is the conduct of NKPD at the Dock. Accordingly, the Court denies Defendants' Motion to Dismiss Count Two.

### 3. Count Four: Cruel and Unusual Punishment

Count Four does not relate back to the Complaint because the Complaint includes no mention of mistreatment while Ms. Albanese was detained. Count Four

13

alleges that Ms. Albanese experienced cruel and unusual punishment at the hands of NKPD while she was detained. ECF No. 15 at ¶¶ 65-66. She alleges that "Defendants ignored [her] pleas for medical attention" despite experiencing significant distress from medical conditions while detained. *Id.* at ¶ 46. This conduct, however, transpired at a separate time than the other two occurrences alleged—the Dock incident and the altercation with Lieutenant Silva. *See id.* at ¶¶ 43-46 (describing the events leading up to her alleged mistreatment). Moreover, it is fundamentally of a different "type" than the other two occurrences. The Complaint contains no mention of mistreatment while detained. Nor does it detail any necessity for medical attention. Thus, this claim does not relate back because it does not allege a common core of operative facts that was pled in the Complaint. Because this claim does not relate back, it is time barred based on the three-year statute of limitations. Accordingly, the Court GRANTS Defendants' Motion to Dismiss Count Four.

### 4. Claims Against Harbormasters Broccoli and Hughes; Officers Pluta, Robinson, and Smith; Detective St. Onge, Captain MacCoy, and Chief Flanagan

Ms. Albanese again struggles to develop a nexus between these individual Defendants' alleged acts and the various claims asserted. A claim must "set forth minimal facts, not subjective characterizations, as to who did what to whom and why." *Dewey v. Univ. of N.H.*, 694 F.2d 1, 3 (1st Cir. 1982). The Amended Complaint claims that Ms. Albanese was wrongfully arrested and detained at the Dock for accessing a public dock. *See* ECF No. 15 at ¶ 25. She also alleges that, after the arrest, she was brought to the NKPD station to sign paperwork for an arraignment

hearing in state district court. *Id.* at ¶ 41. At no point does she relate any of these named Defendants to any of the factual allegations of those two occurrences. She explicitly names only one officer in the NKPD station occurrence—Lieutenant Silva. *See id.* at ¶¶ 44-45. Although the Complaint clarified some of this confusion, the Amended Complaint is the operative complaint. *See Ramirez v. Collier*, 142 S. Ct. 1264, 1276 (2022) (quoting *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010)) ("As a general rule, when a plaintiff files an amended complaint, the amended complaint [supersedes] the original, the latter being treated thereafter as non-existent."). Here, the Amended Complaint effectively reproduces the NKPD directory to link someone to the claims pleaded. This approach to pleading proves unpersuasive. It is not the Court's role to infer which persons took which alleged actions where no factual basis to support these inferences exists. Because she fails to allege which of these Defendants "did what to whom and why", Ms. Albanese's Amended Complaint against them fails to state a claim. *Dewey*, 694 F.2d at 3. Accordingly, the Court grants Defendants' Motion to Dismiss all claims against Harbormasters Broccoli and Hughes; Officers Pluta, Robinson, and Smith; Detective St. Onge, Captain MacCoy, and Chief Flanagan.

## IV. CONCLUSION

For these reasons, the Court DENIES Defendants' Motion to Dismiss as to Count Two and GRANTS Defendants' Motion to Dismiss as to Counts One and Four; all claims arising before September 18, 2019; all claims against Defendants Harbormasters James Broccoli and Edward Hughes; Officers Andrew Pluta, Thomas

Robinson, and Charles Smith; and Detective Jeffrey St. Onge, Captain John MacCoy, and Chief of Police Patrick Flanagan. ECF No. 34.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

July 11, 2023